**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TOTAL SAFETY *et al*, § | | CIVIL ACTION NO. |
| Plaintiffs, § | | 4:19-CV-02718 |
| § | | |
| § | | |
| vs. § | | JUDGE CHARLES ESKRIDGE |
| § | | |
| § | | |
| ALICIA KNOX, § | | |
| Defendant. § | | |

**MEMORANDUM AND ORDER
GRANTING MOTION TO TRANSFER VENUE**

Before the Court is a motion filed by Defendant Alicia Knox to transfer venue to the Corpus Christi Division. Dkt 10. Upon consideration, the Court grants the motion.

1.  Background

Plaintiffs Total Safety US Inc and Total Safety On-Site Services Inc (together, Total Safety) provide integrated industrial safety services to the petrochemical refining, pipeline, and industrial sectors. Both Total Safety entities are Delaware corporations with principal places of business in Houston. Dkt 1 at 1–2. Total Safety also does business in Corpus Christi with an office of approximately thirty full-time employees. Dkt 31 at 34.

Knox is a resident of Corpus Christi. Dkt 1 at 2. In May 2019, Total Safety acquired Airgas On-Site Services Inc, a national safety service provider. Knox worked for Airgas in Corpus Christi at the time of the acquisition, but she resigned shortly after. She continues to live in Corpus Christi and now works there for Select Safety Service Inc, allegedly a direct competitor of Total Safety. Dkt 1 at 6.

Total Safety alleges that Knox misappropriated confidential business information and trade secrets. Total Safety further

alleges that Knox contacted her customers "in Corpus Christi, Texas," on behalf of Select Safety in violation of her nonsolicitation agreement. Dkt 1-4 at 1 (Total Safety demand letter prior to filing suit); see also Dkt 1 at 16.

In July 2019, Total Safety filed suit against Knox in the Houston Division of the Southern District of Texas. Total Safety asserts violations of the Trade Secrets Act and the Computer Fraud and Abuse Act, misappropriation of trade secrets under Texas law, and breach of contract. See Dkt 1.

When filing suit, Total Safety also sought preliminary and permanent injunctive relief. Dkt 1 at 16–17. Rather than proceed to hearing, Total Safety and Knox agreed to a preliminary injunction to avoid unnecessary costs and fees. Dkt 12-1 at 1. On July 30th, the Court entered the agreed preliminary injunction. Dkt 13. Knox later brought a motion to dissolve the preliminary injunction, which this Court denied. See Dkts 26, 35.

Knox filed the instant motion to transfer this case to the Corpus Christi Division under 28 USC § 1404(a). On December 5th, the Court heard argument on the motion. Dkt 31 (transcript).

2. Legal standard

District courts may transfer an action for the "convenience of parties and witnesses" and "in the interest of justice" to any other district "where it might have been brought." 28 USC § 1404(a). Allowing the potential for transfer under § 1404 serves to prevent a potentially unfair imposition of burden on defendants when plaintiffs exercise their privilege under § 1391 to select venue in the first instance. See *In re Volkswagen of America, Inc,* 545 F3d 304, 313 (5th Cir 2008) (*Volkswagen II*).

When considering a motion to transfer, the initial question is whether the action "might have been brought" in the alternative venue. Id at 312. If it could have been, the district court then determines whether transfer serves the convenience of parties and witnesses and is in the interests of justice. *In re Volkswagen AG*, 371 F3d 201, 203 (5th Cir 2004) (*Volkswagen I*). This balance considers a range of private and public factors, with none having dispositive weight. *Volkswagen II,* 545 F3d at 315, citing *Gulf Oil*

2

*Corp v Gilbert*, 330 US 501 (1947); see also *Volkswagen I*, 371 F3d at 203.

The items of private-interest consideration are:

- o  The relative ease of access to sources of proof;
- o  The availability of compulsory process to secure the attendance of witnesses;
- o  The cost of attendance for willing witnesses; and
- o  All other practical problems that make trial of a case easy, expeditious, and inexpensive.

The items of public-interest consideration are:

- o  The administrative difficulties flowing from court congestion;
- o  The local interest in having localized interests decided at home;
- o  The familiarity of the forum with the law that will govern the case; and
- o  The avoidance of unnecessary problems of conflict of laws or the application of foreign law.

To justify transfer, the movant must demonstrate that its preferred venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F3d at 315. This burden on the movant "adequately accounts for a plaintiff's choice of forum," to which the venue-transfer analysis does not otherwise accord any special deference. *Ayala v Waste Management of Arizona, Inc*, 2019 WL 2085106, at *3 (SD Tex) (citations omitted).

Whether to order transfer is ultimately within a district court's "broad discretion." *Volkswagen II*, 545 F3d at 311 (quotations omitted).

### 3. Analysis

Total Safety doesn't dispute that it could have brought this action in Corpus Christi. Dkt 31 at 32. And so, the Court need

only consider whether transfer is for the convenience of the parties and witnesses and in the interests of justice.

      a.   Private factors

The private factors examine the relative burdens imposed by geography. Texas is of course a large state, with the Southern District of Texas being one of the largest federal divisions by land mass in the United States:

> The Southern District of Texas embraces more than 44,100 square miles, approximately one-fifth of the real estate in Texas. Its edge is delineated on the southwest by 250 miles of the Rio Grande, the river that marks the border between the United States and Mexico. In its nearly 400-mile sweep to the northeast from the Rio Grande, the district encompasses a ribbon of Texas that ranges in width from 100 to 200 miles.

Steven Harmon Wilson, *The Rise of Judicial Management in the US District Court, Southern District of Texas, 1955–2000*, 1 (University of Georgia Press 2002).

This expanse includes seven divisions spread across forty-three counties. With the repeal of § 1393 in 1988, an express statutory requirement no longer sets the appropriate division within a given federal district in federal civil cases. See Wright & Miller, *Federal Practice and Procedure* § 3809 (4th ed). And so, a close look is necessary to examine the increasing burdens associated with the distance from the northernmost courthouse of the Houston Division to those in the Galveston Division (51 miles), the Victoria Division (128 miles), the Corpus Christi Division (208 miles), the Laredo Division (315 miles), the McAllen Division (348 miles), and the Brownsville Division (352 miles). For the Fifth Circuit pragmatically recognizes that additional distance adds not only travel time and expense but also attendant meal and lodging expenses, while implicating time away from work and home responsibilities. See *Volkswagen I*, 371 F3d at 205.

*The availability of compulsory process to secure the attendance of witnesses* and *the cost of attendance for willing witnesses* in this instance

both weigh in favor of transfer to Corpus Christi. Knox lived and worked in Corpus Christi when the alleged misappropriation of confidential information occurred. She still does. Neither Total Safety nor Knox have yet identified solicited customers that might be at issue. But Total Safety's presuit demand letter expressed concern only about customers in Corpus Christi. Dkt 1-4 at 1. And it is clear in Knox's motion and from her counsel's representations at hearing that her customers were and are exclusively within the Corpus Christi area. See Dkt 10 at 4; Dkt 31 at 25–27. As such, the core witnesses in this case—Knox's current and former colleagues and clients—are there.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F3d at 204–05. As the Court has already recognized, and as Knox points out, travel to Houston is over two hundred miles each way for her and any of her witnesses. This imposes a burden of both time and expense on many witnesses. See *RLI Insurance Co v Hunter*, 2007 WL 1795714, at *1 (SD Tex) (granting transfer from Houston to Corpus Christi in part due to travel burden).

For its part, Total Safety identifies six witnesses—four employees and two forensic experts. Only three apparently live in Houston. It links the other three to Houston only euphemistically as "regularly conducting business" here or "regularly working" within one hundred miles of the courthouse—meaning that they actually live elsewhere. Dkt 18 at 4–5. In any event, these are all either party witnesses or retained experts. Their convenience simply doesn't weigh as heavily in the balance. "The availability and convenience of nonparty witnesses rather than that of party and expert witnesses is accorded the greatest weight in a transfer of venue analysis." *Wimbledon Fund, SPC v Bergstein*, 2016 WL 9449785, at *3 (SD Tex); see also *Ayala*, 2019 WL 2085106, at *6.

*The parties' interest in an easy, expeditious, and inexpensive trial* likewise favors Corpus Christi. Total Safety argues that its choice of venue should prevail, noting that one set of parties and

witnesses will travel whichever courthouse hosts the litigation. But the equities are not the same. Knox does not conduct business in Houston. Total Safety does conduct business in Corpus Christi, where it in fact has an office.

*Ease of access to proof* likewise favors transfer. Beyond witnesses, Total Safety suggests only that the electronic and digital evidence is in Houston. But the reason that is so is because Knox, in Corpus Christi, complied with this Court's preliminary injunction and turned over the requested devices to Total Safety, who now has them in Houston. Dkt 18 at 3. That is hardly reason to consider such evidence as being "located" here in any meaningful sense of convenience or the interests of justice pertaining to venue. Regardless, these digital and electronic records are quite easily moved, minimizing any concern about their present, physical location. See *Devon Energy Production Co, LP v GlobalSantaFe South America*, 2007 WL 1341451, at *7 (SD Tex).

    b. Public factors

*Administrative difficulties* favor neither courthouse. The parties offer no evidence on relative court congestion as between Houston and Corpus Christi. Instead, Total Safety curiously suggests that "Houston is easily accessible by both sides, and the Court's electronic filing system allows both sides to conveniently file motions, responses, and pleadings." Dkt 18 at 6. Fortunately, the Corpus Christi Division also possesses the same technology. The Court foresees no difficulties at trial in either location.

*The forum's familiarity with the governing law* and *the avoidance of conflict of laws or foreign law issues* likewise favors neither division. The applicable law is straightforward and readily apparent.

*The local interest in having localized interests decided at home* is the factor most heavily favoring transfer. "This factor generally favors venue where the acts giving rise to the lawsuit occurred." *Ayala*, 2019 WL 2085106, *6; see also *Potter v Cardinal Health 200, LLC*, 2019 WL 2150923 at *6 (ED Tex) (division within district where injury occurred had greater local interest than division where case filed). Quite simply, this dispute's center of gravity is Corpus Christi. If Knox unfairly competes, and if Total Safety unfairly loses customers, it will happen there.

Of particular influence here, Total Safety seeks to enjoin Knox's work activity in Corpus Christi. Dkt 1 at 16. It has already obtained an agreed injunction on a preliminary basis. Dkt 13. Total Safety concedes that at least part of any permanent injunctive relief would last in perpetuity. Dkt 31 at 22. And any later conduct by Knox in violation of such an injunction would occur in Corpus Christi.

"Enforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." *Waffenschmidt v MacKay*, 763 F2d 711, 716 (5th Cir 1985). As such, this Court's continuing oversight would impose a genuine burden on Knox upon any mere allegation of impropriety against her by Total Safety. For she would then have to travel two hundred miles to Houston to defend herself regarding conduct alleged to have occurred in the very place from which she traveled.

Knox is a resident of Corpus Christi. Insofar as it pertains to this dispute, she appears only to have worked in Corpus Christi. Total Safety is of course entitled to seek to enjoin any wrongful conduct with respect to that work. But the federal court in Corpus Christi has a far greater interest in overseeing an injunction imposed on an area resident, and it can do so less burdensomely than this Court.

    4.   Conclusion

Knox has demonstrated that the Corpus Christi Division is "clearly more convenient" than the Houston Division and has shown good cause for granting a transfer under 28 USC § 1404(a).

The Court GRANTS the motion to transfer venue.

This action is TRANSFERRED to the Corpus Christi Division of the Southern District of Texas.

SO ORDERED.

Signed on December 20, 2019 at Houston, Texas.

Hon. Charles Eskridge
United States District Judge